UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BRYCE AARON BABINEAUX** | **CASE NO. 6:24-CV-00023** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **TALCOTT RESOLUTION LIFE & ANNUITY INSURANCE CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## RULING

Before the Court is a Motion for Summary Judgment [ECF No. 25] filed by plaintiff Bryce Babineaux ("Plaintiff"). Third-party interpleader defendant Julie Underwood, the independent executrix of the succession of Katherine Mashburn, opposes the motion. The Court has considered the parties' submissions, the summary judgment record, and the relevant authorities, and rules as follows.

## I.
### BACKGROUND

This case involves a dispute over proceeds from a life insurance policy following a tragic murder-suicide. In the early morning of April 17, 2023, Katherine Mashburn was murdered by her estranged husband, Eric Babineaux.[1] Mashburn and Babineaux were involved in a divorce proceeding in the 15th Judicial District Court, Lafayette Parish—*Babineaux v. Babineaux*, Docket #2023-0329-E3 (C/W: 2023-0515).[2] The court in that divorce proceeding issued a Temporary Restraining Order against Babineaux precluding him from, *inter alia*, taking certain actions with respect to community property.[3] One of those restrictions included a prohibition against Babineaux

---

[1] ECF No. 27 at 2-3 (citing to trial transcript from *Malorie Vincent and Drake Vincent v. Estate of Eric Blaine Babineaux and Erika Babineaux Oddo as Representative of the Estate of Eric Blaine Babineaux*, Docket No. C-20234667 – D, 15th Judicial District Court, Parish of Lafayette).
[2] *Id.* at 1.
[3] *Id.* at 6.

1

changing the beneficiaries of his life insurance policies.[4] The undisputed facts show that, at approximately 4:32 a.m. on April 17, 2023, Babineaux approached Mashburn's bedroom window, sounded an airhorn to wake her up, and then fired multiple shots from a pistol that struck Mashburn, including a shot to her right temple.[5] Babineaux then broke through the window and entered Mashburn's bedroom.[6] He proceeded to lay down next to Mashburn on the bed and then shot himself in the head.[7] Mashburn's children and heirs subsequently filed a wrongful death lawsuit against Babineaux's estate and the result of that suit was a judgment that included approximately $200 million in exemplary damages.[8] Bryce Babineaux, Eric Babineaux's son, subsequently filed the present action seeking the proceeds of Eric Babineaux's insurance policy with Talcott Resolution Life and Annuity Insurance Company. Plaintiff named Talcott as a defendant and Talcott subsequently filed an answer and a Third-party Complaint for Relief in Interpleader.[9] Talcott alleged that Mashburn was the sole beneficiary to a flexible premium variable universal life insurance policy issued to Eric Babineaux. Talcott also alleged that Plaintiff was the sole contingent beneficiary to the policy. The Court subsequently granted Talcott's Motion for Interpleader Deposit and dismissed Talcott as a defendant.[10] Plaintiff then filed the present Motion for Summary Judgment, arguing that he is entitled to the proceeds of Babineaux's insurance policy as the contingent beneficiary because, as a matter of law, Babineaux is presumed to have outlived the primary beneficiary to the policy under Louisiana law.

---

[4] *Id.*
[5] *Id.* at 2-3.
[6] *Id.*
[7] *Id.*
[8] *Malorie Vincent and Drake Vincent v. Estate of Eric Blaine Babineaux and Erika Babineaux Oddo as Representative of the Estate of Eric Blaine Babineaux*, Docket No. C-20234667 – D, 15th Judicial District Court, Parish of Lafayette.
[9] ECF No. 9.
[10] ECF No. 24.

2

## II.
### THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[11] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[13] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[14]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[15] "Credibility determinations are not part of the summary judgment analysis."[16] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[11] Fed. R. Civ. P. 56(a).
[12] *Id.*
[13] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[14] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[15] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[16] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

of proof."[17] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond … (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

## III.
### DISCUSSION

Plaintiff contends that there is insufficient evidence to show that Mashburn outlived Babineaux and that, under La. R.S. § 22:911 (Louisiana's Simultaneous Death Statute), Babineaux is presumed to have outlived Mashburn for purposes of determining how to distribute the proceeds of Babineaux's life insurance policy. Accordingly, he argues that he is entitled to Babineaux's insurance proceeds as a matter of law.

Underwood opposes summary judgment on three grounds. *First*, she argues that Louisiana's so-called Slayer Statute, La. R.S. § 22:901(D), precludes Plaintiff's recovery. *Second*, she argues that the TRO entered in Mashburn's and Babineaux's divorce proceeding barred Babineaux from "changing the ownership or beneficiary on any and all community … policies …."[18] Underwood argues that, based on this state court order, Mashburn held a vested right as the primary beneficiary of Babineaux's policy and that her right could not be divested by Babineaux's actions and the provisions of the Simultaneous Death Statute. *Third*, Underwood argues that there is a genuine issue of material fact as to whether Mashburn outlived Babineaux and, accordingly, summary judgment is inappropriate. The Court addresses each argument in turn.

---

[17] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[18] ECF No. 27 at 5-6.

4

### A. The Slayer Statute.

La. R.S. § 22:901(D) provides that:

> (1) No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits under the contract accruing upon the death, disablement, or injury of the individual insured when the beneficiary, assignee, or other payee is either:
>
>> (a) Held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement, or injury of the individual insured.
>>
>> (b) Judicially determined to have participated in the intentional, unjustified killing of the individual insured.
>
> (2) Where such a disqualification exists, the policy proceeds shall be payable to the secondary or contingent beneficiary, unless similarly disqualified, or, if no secondary or contingent beneficiary exists, to the estate of the insured.

As Underwood acknowledges, the language of the statute does not apply to the facts of the present case. Specifically, the statute bars a beneficiary from recovering under a policy where the *beneficiary* caused the death of the insured. Here, the *insured* caused the death of the primary beneficiary and the contingent beneficiary (Plaintiff) seeking recovery was not involved in the deaths of either the primary beneficiary or the insured. In *Graves v. Garden State Life Ins.*,[19] the court rejected application of the Slayer Statute based on similar facts. As in the present case, the husband/insured murdered his wife, who was the primary beneficiary of his policy, and then committed suicide. The *Graves* court concluded that the Slayer Statute did not apply and that the proceeds of the husband's policy should go to his estate. According to the court, the statute "specifically addresses intentional acts resulting in the death, disablement or injury of the insured [but] does not address any consequences to the death, disablement or injury to the beneficiary."[20]

---

[19] 2003-2208 (La. App. 1 Cir. 9/17/04), 887 So. 2d 506, 508.
[20] *Id.*

Underwood argues that *Graves* is distinguishable because the policy in that case included contractual simultaneous death language that is not present in Babineaux's policy and the insured in *Graves* was not subject to a temporary restraining order that prevented changes to the beneficiaries of the policy. The Court disagrees. Neither factor is relevant to the *Graves* court's (or this Court's) reading of the unambiguous text of the statute. Based on the plain meaning of the words of the statute, this exclusion does not apply to the proceeds from Babineaux's policy under the facts of this case. Neither the TRO nor the differing policy language cited by Underwood change this result.

Next, Underwood argues that equity and the policies underlying the Slayer Statute support extending its exclusion to the present case. Underwood's equity arguments are compelling in light of the facts of this case but they do not support the broad reading of the Slayer Statute that she proposes. In construing the terms and scope of a statute, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statutes meaning, in all but the most extraordinary circumstance, is finished."[21] In other words, where, as here, the text of the statute is unambiguous, the Court cannot simply ignore that statutory text whenever equity may support a broader (or different) application of the statute than the language of the statute permits.[22] The text of the Slayer Statute, fairly construed, does not apply to the facts of this case.

### B. Effect of State Court TRO.

Underwood next argues that the TRO entered in Mashburn's and Babineaux's state court divorce proceeding precludes Babineaux's actions from divesting Mashburn from her rights as the

---

[21] *In re Condor Ins. Ltd.*, 601 F.3d 319, 321 (5th Cir. 2010).
[22] *Davenport v. United States*, 450 F. Supp. 2d 96, 98 (D.D.C. 2006) ("Whatever 'extraordinary powers' this Court may possess to provide equitable relief in the proper cases, it most certainly does not include the power to rewrite statutes.") (quoting *Turner v. United States*, 429 F.Supp.2d 149, 153 (D.D.C. 2006)).

primary beneficiary of Babineaux's policy. The January 25, 2023 TRO entered by the 15th JDC enjoined Babineaux from:

> [T]ransferring, moving, disposing of, alienating, or otherwise encumbering any of the assets of the community of acquets and gains existing between [Katherine] and [Babineaux], and further, from withdrawing, converting or disposing of any community funds on deposit at any bank or trust company in the name of either or both parties and from borrowing against any cash surrender values of any community life insurance policies or accounts of any kind or from changing the ownership or beneficiary on any and all community accounts, policies, and/or plans.[23]

Underwood argues that, because this TRO prohibited Babineaux from removing Mashburn as a beneficiary, Mashburn had a "legally vested right as [Babineaux's] principal beneficiary at the time of her death."[24] Underwood further argues that, by murdering Mashburn, Babineaux violated the TRO by effectively removing Mashburn as a beneficiary.[25]

Again, Underwood's equity arguments cannot support the relief she is seeking. The state court TRO does not expressly address the factual context presented by this case but appears to address only changes to beneficiaries pursuant to the contractual terms of the policy—for example, by filing a change of beneficiary form—not the broader effect urged by Underwood. If the state court that issued the TRO intended such a broad reading of the TRO, that court is in the best position to construe and enforce the TRO. But the express language of the state court's order does not support such a broad reading.

Given that the express language of the TRO does not support Underwood's broad reading of the order, she is essentially requesting that this Court modify the terms of the state court's TRO and expand its scope. This request runs into an even more formidable problem. Under the *Rooker–Feldman* doctrine, "federal district courts, as courts of original jurisdiction, lack appellate

---

[23] ECF No. 27-1.
[24] ECF No. 27 at 5.
[25] *Id.*

7

jurisdiction to review, *modify*, or nullify final orders of state courts."[26] Moreover, under the so-called "domestic relations exception," federal courts lack jurisdiction over domestic relations cases.[27] This exception prevents a federal court from "reopen[ing], reissue[ing], correct[ing], or *modify[ing]*" an order in a domestic-relations case.[28] Given the express language of the TRO, Underwood's argument would require the Court to modify and expand the state court's TRO—relief that this Court lacks jurisdiction to grant.

### C. The Simultaneous Death Act.

Finally, the Court addresses Plaintiff's argument that Louisiana's Simultaneous Death Act, La. R.S. § 22:911, requires summary judgment in his favor. La. R.S. § 22:911 provides that:

> Where the individual insured and the beneficiary designated in a life insurance policy or policy insuring against accidental death have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, unless otherwise expressly provided in the policy.

Plaintiff contends that there is no "sufficient evidence" that Mashburn and Babineaux "died otherwise than simultaneously" and, accordingly, Babineaux is presumed to have survived Mashburn for purposes of distributing the proceeds of Babineaux's policy. Underwood argues that there are genuine questions of material fact as to whether Mashburn survived Babineaux. If Mashburn did survive Babineaux, she was the beneficiary under the policy at the time of Babineaux's death and her estate would be entitled to the proceeds of his insurance policy.

La. R.S. § 22:91 does not define the term "simultaneously." Turning to the dictionary definition, the term "simultaneously" is defined as events "existing or occurring at the same time"

---

[26] *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir.1994) (citations and internal punctuation omitted) (emphasis added); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).
[27] *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).
[28] *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017) (emphasis added).

or "exactly coincident."[29] The home surveillance video in the record shows that Babineaux walked up to Mashburn's bedroom window at approximately 4:32 a.m., shot through the window, kicked through the window, and entered her bedroom.[30] Keith Talamo, chief medicolegal investigator for the Lafayette Parish Coroner's Office, states in his affidavit that he observed three gunshot wounds to Mashburn's body—one near her right-side armpit, another through her right shoulder, and a third wound to her right temple.[31] Talamo further states that the wound near Mashburn's right armpit was likely the first shot to strike her and that "[w]hile there was dried blood indicative of some aspiration occurring after the first wound, it is only indicative that [Mashburn] survived for some period of time after the first shot, but not how long."[32] Talamo concludes that "[i]t is unlikely that [Mashburn] would have survived the gunshot to her right temple for any significant length of time," and that he "found nothing in the examination of [Mashburn's] body that would indicate she continued to live subsequent to the death of [Babineaux]."[33] The record also shows that the death certificates for both Mashburn and Babineaux have the same date and time of death—April 17, 2023 at 4:45, approximately 13 minutes after Babineaux approached the window and fired the first shot.[34] The certificates also identify Mashburn as married with Babineaux as her spouse. But the certificate for Babineaux identifies him as "widowed."[35]

---

[29] *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/simultaneous. (accessed July 8, 2025); *McCurtis By & Through Love v. Life Ins. Co. of N. Am.*, 849 F. Supp. 1141, 1146 (S.D. Miss. 1994). In construing the identically worded Mississippi Simultaneous Death Law, the court similarly observed that while "simultaneous" was not specifically defined in the Mississippi statute, "case law establishes that the term is to be given its 'ordinary and accepted meaning,' i.e., 'occurring at the same time.'" (quoting *Estate of Villwock v. Olinger*, 142 Wis.2d 144, 418 N.W.2d 1 (1987)); *see also Smith v. Smith*, 229 Ark. 579, 317 S.W.2d 275 (1958) (simultaneous means "at the same time" under Simultaneous Death Act).
[30] ECF No. 27 at 2-3.
[31] ECF No. 25-2 (Affidavit of Keith Talamo).
[32] *Id.*
[33] *Id.*
[34] ECF No. 25-3.
[35] *Id.*

Underwood, however, points to Talamo's deposition testimony and argues that there is a genuine issue of material fact as to whether Mashburn survived Babineaux. Specifically, in his deposition testimony, Talamo testified that his examination showed "blood coming out of the nose and mouth of Ms. Mashburn's body," which would indicate "breathing or aspiration after [Mashburn] was shot."[36] In response to the question "what you are saying is that it's more probable than not that she survived for some period of time after she was shot," Talamo appears to reply in the affirmative: "For some period of time."[37] There is no evidence in the record as to whether the examination of Babineaux's body revealed similar signs of breathing or aspiration after he was shot.

Unfortunately, La. R.S. § 22:911 also does not define what constitutes "sufficient evidence" that the parties died other than simultaneously. Plaintiff cites *Transamerica Premier Life Ins. Co. v. Guy* to support his position that the simultaneous time of death reflected in Mashburn's and Babineaux's death certificates are dispositive.[38] In *Guy*, a husband and wife were murdered by their son and the question addressed by the court was whether they died simultaneously.[39] The court concluded that they did and that the presumption of La. R.S. § 22:911 applied based on the times-of-death reflected on the death certificates.[40] However, the *Guy* court cites no other evidence that might have indicated—or least that might have created a triable issue—whether the deaths occurred at the same time or whether either the husband or the wife outlived the other. On the other hand, in *Empire Gen. Life Assur. Corp. v. Zarate-Swain*, the court addressed the application of La.

---

[36] ECF No. 27-3 at 15 (Deposition of Keith Talamo). Talamo sat for his video deposition as part of the state court wrongful death proceeding filed by Mashburn's children and the heirs of her estate in *Malorie Vincent and Drake Vincent v. Estate of Eric Blaine Babineaux and Erika Babineaux Oddo as Representative of the Estate of Eric Blaine Babineaux*, Docket No. C-20234667 – D, 15th Judicial District Court, Parish of Lafayette.
[37] *Id.* at 16.
[38] 545 F. Supp. 3d 426, 435–36 (E.D. La. 2021).
[39] *Id.*
[40] *Id.*

R.S. § 22:911 where there was some evidence suggesting that one decedent outlived the other.[41] As here, the plaintiff in *Zarate-Swain* moved for summary judgment based on La. R.S. § 22:911.[42] The court held that, in order to prevail on summary judgment, the plaintiff had to demonstrate that "there is no genuine issue of material fact with respect to the insufficiency of the evidence of survival."[43] The defendant, however, could defeat the motion for summary judgment by pointing to evidence that created a genuine issue of material fact as to whether the beneficiary outlived the insured.[44] According to the *Zarate-Swain* court, the defendant could not rely solely on "speculative medical science and/or inferences drawn from the [deceased beneficiary's] advanced age" but that the defendant did not have to "pinpoint the exact moment when each [insured] died" to meet his summary judgment burden.[45] The court ultimately concluded that the record revealed genuine issues of material fact as to the timeline of the death of the insured and beneficiary.

Here, as in *Guy*, the death certificates support Plaintiff's position. Unlike *Guy*, however, Underwood points to evidence that Mashburn lived for some period of time after she was shot—specifically the testimony of Talamo that Mashburn's body exhibited some evidence of breathing or aspiration after she was shot and that she likely lived "[f]or some period of time" thereafter. The record does not reflect any similar evidence indicating that Babineaux lived for any period of time after he shot himself. This evidence is, admittedly, not as strong as the timeline evidence in *Zarate-Swain*. However, the evidence is sufficient to create genuine issues of material fact with respect to the timing of Mashburn's and Babineaux's deaths.

---

[41] 430 F. Supp. 2d 586, 590–91 (W.D. La. 2006).
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

11

## V.
### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Judgment [ECF No. 25].

THUS DONE in Chambers on this 8th day of July, 2025.

                                            ROBERT R. SUMMERHAYS
                                            UNITED STATES DISTRICT JUDGE